IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA (MIAMI DIVISION)

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABRAHAM EDGARDO ORTEGA,<br><br>*Defendant*. | Case No.: 1:18-cr-20685-KMW |

### THE BOLIVARIAN REPUBLIC OF VENEZUELA'S
### MOTION FOR SUBSTITUTION OF COUNSEL

The Bolivarian Republic of Venezuela (the "Republic") hereby moves for an order substituting the undersigned as counsel for the Republic and removing William R. Tunkey of William Tunkey P.A. and Joseph Nascimento of Ross Amsel Raben Nascimento, PLLC (collectively, the "Current Attorneys") as attorneys of record for the Republic.

### BACKGROUND

The Current Attorneys filed appearances and a motion for victim status and restitution, purportedly on behalf of the Republic, on April 2, 2019. D.E. 87, 88, 89. On May 17, 2019, the United States filed an opposition to the Current Attorneys' motion. D.E. 99. In that filing, the United States observes that the Current Attorneys do not represent the legitimate government of Venezuela as recognized by the President of the United States, but rather take instruction from Reinaldo Muñoz Pedroza, "an appointee or representative of former President Nicolas Maduro Moros" who "was specifically and publicly denounced by the [Venezuelan] National Assembly as having no legal authority to act on behalf of Venezuela." D.E. 99, at 1. The United States argues that because the Executive Branch does not recognize Mr. Muñoz's "authority to

1

represent the legitimate and recognized government of Venezuela," the Court should deny the Current Attorney's pending motion for victim status and restitution. *Id.* at 2.

The undersigned counsel do not take instruction from Mr. Muñoz, but from the Republic's Special Attorney General José Ignacio Hernández, who acts on behalf of Interim President Juan Guaidó. Since January 10, 2019, Mr. Guaidó has assumed the office of Interim President of the Republic pursuant to Article 233 of the Venezuelan Constitution. On January 23, 2019, President Donald Trump issued a statement officially recognizing Mr. Guaidó as Interim President of the Republic and rejecting the legitimacy of the Maduro regime.[1] On January 25, 2019, the U.S. Department of State accepted Interim President Guaidó's designation of Carlos Alfredo Vecchio as the Chargé d'Affaires of the government of Venezuela.[2] On January 29, 2019, Interim President Guaidó appointed Mr. Vecchio to be Ambassador of Venezuela to the United States; the State Department recognized Ambassador Vecchio on February 5, 2019; and President Trump formally received Ambassador Vecchio on April 8, 2019. On February 26, 2019, the National Assembly of the Republic approved the designation of José Ignacio Hernández González as Special Attorney General to represent the interests of the Republic, state-owned companies, and other decentralized entities of the public administration outside of Venezuela.

---

[1]  The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela* (Jan. 23, 2019), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

[2]  U.S. Department of State, Press Release, *Representative of the Government of Venezuela to the United States* (Jan. 27, 2019), *available at* https://www.state.gov/secretary/remarks/2019/01/288609.htm

On May 22, 2019, Special Attorney General Hernández notified the Current Attorneys that the Republic was terminating any attorney-client relationship that may have existed between the Republic and the Current Attorneys and their firms, effective immediately. (The letter is attached as Exhibit A). Mr. Hernández further noted that the Republic will henceforth be represented in this case solely by the law firm of Arnold & Porter Kaye Scholer, LLP ["Arnold & Porter"]. Mr. Hernández then instructed attorneys at Arnold & Porter to file the instant Motion.

## DISCUSSION

Substitution of current counsel is required by the President of the United States' decision to recognize President Guaidó as the Republic's rightful representative. A Presidential decision to recognize a party as the rightful government of a foreign state is conclusive and binding on the courts:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts. Its action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination . . . .

*Guaranty Trust Co. v. United States*, 304 U.S. 126, 137–38 (1938).

Courts are equally bound to accept the Executive Branch's refusal to recognize a foreign government or faction. Permitting such a government to appear on behalf of the foreign state in U.S. courts necessarily implies acknowledgment of that government as the legitimate sovereign of the people residing within its borders—an acknowledgement and legitimization that would encroach upon the Executive Branch's exclusive recognition power. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964). Accordingly, to avoid the "possible incongruity of

3

judicial 'recognition,'" *id.*, only the representatives of a government that has been recognized by the United States have standing to sue in U.S. courts or otherwise can avail themselves of the U.S. judicial system. *See Pfizer v. Government of India*, 434 U.S. 308, 319–20 (1978); *see also* Restatement (Third) of Foreign Relations Law § 205 ("[A] regime not recognized as the government of a state[] is ordinarily denied access to courts in the United States [and] is not entitled to property belonging to that state located in the United States . . . ."); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988) ("[A] state *derecognizes* a governmental regime when it recognizes another regime as the legitimate government of that state.").

The Executive Branch's authority to recognize and refuse to recognize foreign governments derives from the President's exclusive constitutional power to appoint and receive ambassadors (Article II, Sections 2 and 3), and from the pre-constitutional sovereign power to conduct the foreign relations of the United States. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–21 (1936); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084–85 (2015); Restatement (Third) of Foreign Relations Law § 204 ("Under the Constitution of the United States the President has exclusive authority to recognize or not to recognize a foreign state or government … ."). "As a government, the United States is invested with all the attributes of sovereignty. As it has the character of nationality it has the powers of nationality, especially those which concern its relations and intercourse with other countries. *We should hesitate long before limiting or embarrassing such powers*." *Curtiss-Wright*, 299 U.S. at 322 (quoting *Mackenzie v. Hare*, 239 U.S. 299, 311 (1915)) (emphasis by the *Curtiss-Wright* court).

The constitutional allocation of power over foreign affairs to the Political Branches reflects, in part, the fact that "federal courts generally lack the institutional expertise and

constitutional authority to oversee foreign policy and national security, and should be wary of straying where they do not belong." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1419 (2018) (Gorsuch, J., concurring).  Thus, the courts are "wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004), and circumspect when faced with "the danger of unwarranted judicial interference in the conduct of foreign policy," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 117 (2013).  As the Supreme Court has explained, "neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

For these reasons, courts deem the President's recognition actions binding and conclusive. *Guaranty Trust Co.*, 304 U.S. at 137–38.  That is so both in cases where an unrecognized government seeks to assert claims in U.S. court, *see id.*, and where competing political factions attempt to assert the interests of a foreign sovereign in U.S. court, *see Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 673 (S.D. Fla. 1988).

In *Air Panama*, Judge Hoeveler of this Court confronted a dispute between President Delvalle, the recognized president of Panama, and Manuel Noriega over control of the Panamanian national airline, Air Panama.  The court held that the decision by the President to recognize the Delvalle government conclusively resolved the dispute:

> In the instant case it is undisputed that Air Panama is owned by the Republic of Panama.  The Executive Branch has recognized the Delvalle government as the lawful government of the Republic of Panama.  Therefore, under the political question doctrine, this Court accepts that recognition and consequently concludes that the Delvalle government is entitled to control Air Panama.

745 F. Supp. at 672–73.  The court also rejected purported "appearances" entered by lawyers on behalf of Air Panama on the instruction of the Noriega regime.  *Id.* at 676 ("It clearly appears,

and the Court so finds, that Messrs. Kurzban and Gross are in fact attempting to assert the interests of the Noriega/Palma regime. This effort must be rejected. Only governments recognized by the United States are entitled to access to United States courts.").

As explained above, the Executive Branch has unequivocally and repeatedly repudiated Mr. Maduro's claims of political, legal, and diplomatic authority. Any judicial "recognition" of the Maduro regime, including by permitting attorneys purportedly authorized by that illegitimate regime (and not by representatives of Interim President Guaidó) to represent the interests of the Republic in litigation before this Court, would conflict with the foreign-policy determinations of the Executive Branch, in stark violation of the Constitution's allocation of such determinations to the President.

## CONCLUSION

For the foregoing reasons, the Bolivarian Republic of Venezuela respectfully requests that the Court grant its motion for substitution of counsel and remove William R. Tunkey of William Tunkey P.A. and Joseph Nascimento of Ross Amsel Raben Nascimento, PLLC as attorneys of record for the Republic.

| | |
|---|---|
| Dated: May 22, 2019 | */s/ Jason A. Ross* |
| | Jason A. Ross (Florida Bar No. 59466) |
| | Arturo Caraballo* |
| | Sally L. Pei* |
| | Stephen K. Wirth* |
| | Avishai D. Don* |
| | ARNOLD & PORTER KAYE SCHOLER LLP |
| | 601 Massachusetts Ave., N.W. |
| | Washington, DC 20001-3743 |
| | Telephone: +1 202.942.5000 |
| | Fax: +1 202.942.5999 |
| | jason.ross@arnoldporter.com |
| | arturo.caraballo@arnoldporter.com |
| | sally.pei@arnoldporter.com |
| | stephen.wirth@arnoldporter.com |
| | avishai.don@arnoldporter.com |
| | |
| | Kent A. Yalowitz* |
| | ARNOLD & PORTER KAYE SCHOLER LLP |
| | 250 West 55th Street |
| | New York, NY 10019-9710 |
| | Telephone: +1 212.836.8000 |
| | Fax: +1 212.836.8689 |
| | kent.yalowitz@arnoldporter.com |
| | |
| | **Pro hac* motions forthcoming. |
| | |
| | *Attorneys for the Bolivarian Republic of Venezuela* |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

Dated:  May 22, 2019                             /s/   Jason A. Ross