**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 18-20685-CR-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FRANCISCO CONVIT GURUCEAGA, et al.,

    Defendants.

    _____/

**THIRD-PARTY PETITIONER CRISTOBAL3 PARTNERS, LLC'S MOTION FOR RELIEF FROM SECOND PROTECTIVE ORDER FOR <u>ASSET SUBJECT TO FORFEITURE [DE 126] TO PERMIT THE SALE OF M/Y BLUE ICE</u>**

Third-Party Petitioner Cristobal3 Partners, LLC ("Cristobal3"), by and through its undersigned counsel, moves this Court for relief from the Second Protective Order For Asset Subject to Forfeiture [D.E. 126] to allow Cristobal3, the current owner of the M/Y Blue Ice, to sell the vessel. Cristobal3 should be allowed to sell the M/Y Blue Ice without restriction not only because the restraint of the vessel no longer serves a valid purpose, but because the *status quo* causes identifiable and tangible prejudice to the current, innocent owners of the M/Y Blue Ice.

The protective order no longer serves a valid purpose because forfeiture of this asset will not happen. Cristobal3 is the legal and beneficial owner of the M/Y Blue Ice and is in current possession of the M/Y Blue Ice. Cristobal3, purchased the yacht at a judicial sale in Curacao in April 2021. Cristobal3 has never had anything to do with the criminal charges at issue in this case or any of the individuals charged in this or any other related criminal case. For these reasons, the United States no longer has an interest in forfeiting the M/Y Blue Ice. Indeed, in a recent filing in the related civil

1

forfeiture proceeding, the United States stated that "[h]aving satisfied any concern about its current ownership, the United States believes litigating against its new owner would be unnecessary and intends to seek dismissal of the M/Y Blue Ice to conserve judicial and other resources." *United States v. M/Y Blue Ice, et al.,* 1:19-CV-24249-KMW, D.E. 115, at 10. Similarly, although the prior owner filed a claim asserting ownership of the M/Y Blue Ice, the prior owner does not want the forfeiture action to proceed against the M/Y Blue Ice. Accordingly, restraining the asset serves no purpose because it is unnecessary to "preserve the availability [the vessel] . . . for forfeiture," 21 U.S.C. § 853(e), the basis for the Second Protective Order.

Moreover, the continued restraint of this asset actually harms the current, innocent owner. On a monthly basis, Cristobal3 incurs significant expenses. Indeed, as more fully explained below, each month Cristobal3 must pay monthly fees and costs of more than $85,000 to maintain the vessel. This would be fine if Cristobal3 wanted to keep the vessel – but it does not. Cristobal3 wants to sell the M/Y Blue Ice. Cristobal3 has received several offers for the sale of the M/Y Blue Ice. The only thing standing in the way of that sale is the Second Protective Order, which serves no purpose.

Accordingly, and as more fully explained below, we respectfully submit that Cristobal3 should be granted relief from the Second Protective Order for Asset Subject to Forfeiture [D.E. 126] and be allowed to sell the M/Y Blue Ice without restriction.

I. Procedural History & Background

Four settled and undisputed facts underly this motion: (1) both the United States and the purported former owner of the M/Y Blue Ice acknowledge that the M/Y Blue Ice was sold through a judicial sale to Cristobal3 on or about April 23, 2021; (2) Cristobal3 has nothing to do with the underlying criminal charges in this case; (3) the United States no longer intends to seek forfeiture of the M/Y Blue Ice; and (4) the purported former owner of the M/Y Blue Ice objects to the forfeiture

on various grounds, but in any event, does not want the vessel to be forfeited. Put simply, while there may have once been a reason to restrain this asset – there is no more.

The relevant procedural history derives from two cases. First, it derives from the instant criminal matter. Second, it also derives from the related civil forfeiture action, styled as *United States v. One 1999 135-Foot Baglietto Yacht, known as M/Y Blue Ice, Official Number 40145 Registered in St. Vincent and the Grenadines, in Curacao, et al.*, 1:19-CV-24249-KMW. The procedural history, drawn from both cases is highlighted below, along with other pertinent information related to the M/Y Blue Ice:

- On or about November 20, 2015, MTGP135 LTD was registered as the owner of the M/Y Blue Ice in the St. Vincent and the Grenadines Maritime Administration Certificate of Registry. *See* Exhibit A (Certificate of Registry, dated November 20, 2015, Re. MTGP135).

- On or about August 16, 2018 the United States filed a criminal indictment, which included various forfeiture allegations, *but did not* identify the M/Y Blue Ice as a specific asset subject to forfeiture [D.E. 1].[1]

- Sometime prior to June 24, 2019, the United States filed an *Ex Parte* Application for Second Post-Indictment Protective Order [DE 126].

- On or about June 24, 2019, this Court granted the government's *Ex Parte* Application for Second Post-Indictment Protective Order and entered the Second Protective Order For Asset Subject to Forfeiture [D.E. 126], the Order at issue in this motion, pursuant to 21 U.S.C. § 853(e).

---

[1] The docket entry citations refer to the instant matter's docket. Any citations to the civil forfeiture matter docket are specifically identified.

- The Second Protective Order for Asset Subject to Forfeiture [D.E. 126] provides that:

    The following property is **ENJOINED AND RESTRAINED** in order to preserve its availability for criminal forfeiture: the M/Y Blue Ice, which is more fully described as a 1999 135-foot Baglietto yacht, official number 40146 registered in St. Vincent and the Grenadines (hereafter, the "Subject Vessel").

    The Defendants, including their respective agents, representatives, servants, employees, attorneys, family members, those persons in active concert or participation with the Defendants, or other persons or entities holding or with custody of the Subject Vessel, are **ENJOINED AND RESTRAINED** from selling, transferring, assigning, pledging, distributing, giving away, encumbering, or otherwise participating in the dissipation, disposal (by transfer of stock or otherwise), or removal from the jurisdiction of this Court the Subject Vessel, or any assets traceable thereto, without prior approval of the Court and upon notice to the United States and an opportunity to be heard.[2]

- On or about October 15, 2019, the United States filed its civil forfeiture action against the M/Y Blue Ice, alleging that the M/Y Blue Ice was subject to forfeiture by the United States. *See United States v. M/Y Blue Ice, et al.*, 1:19-CV-24249-KMW, D.E. 1.

- On or about December 31, 2020, MTGP135 filed a verified claim in the civil forfeiture action claiming an interest in the M/Y Blue Ice. *See United States v. M/Y Blue Ice, et al.*, 1:19-CV-24249-KMW, D.E. 93.

- On or about January 6, 2021, MTGP135 was advised by way of a letter that the M/Y Blue Ice was set for judicial sale in Curacao. *See United States v. M/Y Blue Ice, et al.*, 1:19-CV-24249-KMW, D.E. 96-1.

- On or about February 1, 2021, MTGP135 filed a motion to dismiss the forfeiture action against the M/Y Blue Ice, arguing that the court lacked subject matter jurisdiction, the

---

[2] The Protective Order enjoined individuals "holding or with custody of the Subject Vessel," and therefore apparently enjoins Cristobal3, the current innocent party in possession of the vessel. In that regard, Cristobal3 has standing to litigate this issue.

pleadings were insufficient, and failure to state a claim. *See United States v. M/Y Blue Ice, et al.*, 1:19-CV-24249-KMW, D.E. 96.

- Attached as an exhibit to MTGP135's motion to dismiss was the January 26, 2021 letter informing MTGP135 that the M/Y Blue Ice was set for judicial sale in Curacao demonstrating that MTGP135 was aware of the forced sale in Curacao. *See United States v. M/Y Blue Ice, et al.,* 1:19-CV-24249-KMW, D.E. 96-1.

- On or about February 10, 2021, the United States responded to MTGP135's motion to dismiss the civil forfeiture action by serving special interrogatories on MTGP135, which deferred the United States' requirement to respond to MTGP135's motion to dismiss until MTGP135 responded to the special interrogatories. *See United States v. M/Y Blue Ice, et al.,* 1:19-CV-24249-KMW, D.E. 97.

- On or about April 23, 2021, Cristobal3 participated in an action conducted by the Curacao court in connection with the judicial sale of the M/Y Blue. *See* Exhibit B (Judgment of Curacao Court, with certified translation); Exhibit D (Reports of Curacao Court). Cristobal3 was the winning bid. *See id*.

- On or about May 5, 2021, the Curacao court approved the sale to Cristobal3. *See id.*

- On or about May 5, 2021, Cristobal3. was registered as the owner of the M/Y Blue Ice in the St. Vincent and the Grenadines Maritime Administration Certificate of Registry. *See* Exhibit C (Certificate of Registry, dated May 5, 2021, Re. MTGP135).

- On or about October 10, 2021, the United States filed a motion to strike MTGP135's claim, contending that MTGP135 had failed to properly respond to the special interrogatories and because MTGP135 lacked standing. *See United States v. M/Y Blue Ice, et al.,* 1:19-CV-24249-KMW, D.E. 109. Importantly, in its motion, the United States

indicated that the M/Y Blue Ice was sold on April 23, 2021, and is "no longer being beneficially owned or controlled by a co-conspirator of the alleged money laundering conspiracy, or a criminal defendant who has yet to face charges before this Court." *Id.*, at 7-8. As a result, the United States went further to state that it "*anticipate[d] filing a notice of voluntary dismissal with respect to the M/Y Blue Ice*" once MTGP135's claim was dismissed. *Id.*, at 8 (emphasis added).

- On or about October 15, 2021, MTGP135 responded to the United States' motion to strike arguing that it should be denied because it was filed prematurely, and because the court lacked subject matter jurisdiction. *See United States v. M/Y Blue Ice, et al.,* 1:19-CV-24249-KMW, D.E. 111. Significantly, and like the government's acknowledgment noted above, MTGP135 stated in its filing that "*the M/Y Blue Ice had been sold in Curacao to a third-party* whom the Government describes as not 'a co-conspirator of the alleged money laundering conspiracy, or a criminal defendant who has yet to face charges before this Court,' and from whom the Government has no plans (or basis, presumably) to forfeit' the M/Y Blue Ice." *Id.*, at 2 (emphasis added).

- On November 2, 2021, and in accordance with the Court's order, the United States submitted a further filing that addressed MTGP135's subject matter jurisdiction argument and further contended that MTGP135 lacked standing. *See United States v. M/Y Blue Ice, et al.,* 1:19-CV-24249-KMW, D.E. 115. In that filing, the United States stated that it had "confirmed that the M/Y Blue Ice was sold and registered to a new owner," Cristobal3. *Id.*, at 4. The United States goes on to state, "[h]aving satisfied any concern about its current ownership, the United States believes litigating against its new owner would be

unnecessary and intends to seek dismissal of the M/Y Blue Ice to conserve judicial and other resources." *Id.*, at 10.

### a. *Costs Associated with Maintaining the M/Y Blue Ice*

As noted previously, maintaining the M/Y Blue Ice is costly. Proper maintenance requires maintaining a full-time crew, dockage costs and fuel costs – to name just a few. Indeed, the monthly costs of maintaining the M/Y Blue Ice are approximately more than $85,000. Below are some of the costs (approximations) that make up that $100,000.

| | |
|---|---|
| Dockage | $14,175 |
| Electric | $2,800 |
| Water | $375 |
| Sewage Pump Out | $900 |
| Salaries[3] | $46,250 |
| Groceries | $7,500 |
| Scheduled Maintenance | $7,000 |
| Accounting | $750 |
| Satellite Fees | $350 |
| Unscheduled Maintenance Allowance | $7,500 |
| Bunkers for Generators | $2,000 |

Separate and apart from these actual costs, there are also the additional opportunity costs that Cristobal3 is losing without being able to sell the M/Y Blue Ice. For example, if Cristobal3 sold the vessel (which it wants to do) for at least the price it paid, and invested that money at 4.2% – the monthly interest income would be approximately $10,500.

### II. Discussion

A Section 853(e) protective order is intended to "preserve the availability of property . . . for forfeiture." 21 U.S.C. § 853(e). But, such a protective order certainly deprives property owners of significant rights. *See In Re Protective Order*, 790 F. Supp. 1140, 1143 (S.D. Fl. 1992). Indeed, the

---

[3] The crew required to maintain the vessel include Captain, Engineer, Cook, Chief Stewardess, Stewardess 1, Stewardess 2, First Mate, Bosan, and Deckhand.

"clear danger posed by this statutory scheme is the possibility that perfectly legitimate assets will be wrongfully restrained." *United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir. 1989). And, while these risks can be countenanced when the asset is subject to forfeiture, it makes no sense when the asset is not subject to or will not be forfeited.

Here, there is no countervailing interest in continuing to deprive the innocent owner of the M/Y Blue Ice, Cristobal3, of its ability to sell the asset. The United States has stated – on multiple occasions – that it will not seek to forfeit the M/Y Blue Ice. And, the purported prior owner, MTGP135, does not want the asset forfeited as is clear from its motion to dismiss. In other words, there is no reason under Section 853(e) to continue to restrain this asset. Accordingly, the protective order should be lifted.

In addition, continuing to restrain asset prejudices the current innocent owner. More specifically, each day that the vessel cannot be sold – which is precisely what the owner wants to do – the owner incurs significant and real costs. Accordingly, for each of these reasons, this motion should be granted and the protective order should be lifted.

III.    Local Rule 88.9(a) Statement

Undersigned counsel has spoken with the government regarding the relief sought in this motion in an effort to resolve the issues in this motion. The government does not oppose a modification to allow Cristobal3 to sell the M/Y Blue Ice, but they seek to require that the proceeds from that sale be subject to restraint until the litigation in the civil forfeiture action is resolved.

Respectfully, we disagree. The government is walking away from the vessel and therefore restraining the proceeds further serves no real purpose other than depriving Cristobal3 of its property. Accordingly, while we agree that Cristobal3 should be able to sell the vessel, we respectfully disagree that any proceeds from such sale should restrained.

IV.     Conclusion

WHEREFORE, for the reasons discussed above, this motion should be granted and the Second Protective Order for Asset Subject to Forfeiture [D.E. 126] should be lifted to allow Cristobal3 to sell the M/Y Blue Ice without restriction.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Attorneys for Cristobal3*
333 S.E. 2nd Ave., Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0564
Facsimile: (305) 579-0717

*/s/ Jed Dwyer*
JARED E. DWYER
Florida Bar No. 104082
dwyerje@gtlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on the 5th of November 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Jed Dwyer*
JARED E. DWYER
Florida Bar No. 104082